UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TREMAYNE MATTHEWS<br><br>*Defendant.* | Case No. 24-cr-469 (EGS) |

## DEFENDANT'S SENTENCING MEMORANDUM

Pursuant to Title 18 U.S.C. § 3553(a), Tremayne Matthews, by undersigned counsel, respectfully files this memorandum to assist the Court in its sentencing determination. Based on his acceptance of responsibility and expression of remorse, Tremayne Matthews respectfully submits that a term of probation, including a condition of community service is sufficient, but not greater than necessary, to satisfy the purposes of sentencing in this case.

Mr. Matthews admits to submitting false documents in connection with his employment with the Food and Drug Administration and the Internal Revenue Service. He submitted information regarding his work history which was not correct, claimed the work of others as his own, and forged documents including emails, and affidavits submitted to the Internal Revenue Service. Finally, he submitted false information to the Office of Personnel Management in connection with an inquiry into the efficacy of the resume he used in his employment applications.

As noted by U.S. Probation, Matthews' primary goal was to obtain and maintain employment with the federal government and receive a higher salary than previously received in the private sector. The offense was financially motivated.

A federal conviction will appear on any background check and will prohibit Mr. Matthews from obtaining any future employment with the U.S. Government and inhibit his future job prospects. Mr. Matthews asks the Court to impose a sentence of three years' probation, and order restitution order in the amount of $75,000. The federal conviction and requested sentence will deter any future illegal conduct. The sentence will also enable him to maintain his current employment, allow him to make restitution payments as required by the plea agreement, continue his monthly child support obligations, and support his family – including his six-year-old daughter who has been diagnosed with Autism Spectrum Disorder.

## I. Work Background

Mr. Matthews graduated from American University in 2009 and began employment with Voice of America.

### A. U.S. Department of State

In 2012, Matthews began work for STG, Inc., an Arlington-based company providing services to the Foreign Services Institute, a U.S. Department of State office responsible for training members of the U.S. foreign service community.  While employed there, Matthews was mentored by an employee who assisted Matthews in developing his skills. They worked together and supported one another in their job responsibilities. Part of that mentoring consisted in assisting Matthews with making his resume more compatible with government service versus the private sector.

The mentor provided his resume to Matthews as a template. The mentor was a State Department employee, while Matthews was a contract employee. Matthews only incorporated a portion of his co-worker's resume which was intended to be used as a

template to enhance his experience for government employment. Matthews did not "steal a co-worker's work experience" but received assistance from a person interested in helping him.

As Matthews believed they were doing the same work, he adopted the mentor's job description. In the process, Matthews inadvertently left the mentor's employment with a company called NCI Information Systems on the template. A strong indication that the error was inadvertent, and not intentional, is the fact that the NCI work listed occurred from June 2007 to March 2007, at 40 hours per week, with a yearly salary of $75,800, a period of time when Matthews was attending American University full time, which was also on his resume.

It is the State Department job description and the NCI employment which serves as the basis for the false information in the 200 employment applications referenced by the United States. Matthews used USAJobs, the central portal for submitting employment applications for federal employment at U.S. government agencies around the world.

B. National Transportation Safety Board

In 2014, Matthews obtained a full-time position at the National Transportation Safety Board. NTSB hired Matthews based on a resume he had already submitted before revising his resume with the assistance of his mentor. The "revised' resume was not used to obtain employment at NTSB. Matthews worked hard and received praise for his work from both peers and superiors. (See Exhibit A, Letters from Frank Perla, Landi Jackson James, Phil Sandiford, and Performance Reviews). Matthews was qualified for each of the jobs he applied for. His training and experience made him well

suited for the positions of employment he obtained. His four years as an Audiovisual Specialist is sufficient to support his qualifications for the remaining job positions.

    C.  Food and Drug Administration and Internal Revenue Service

Matthews believes he submitted employment applications for the FDA and IRS close in time. In applying for employment, Matthews used the resume template which contained the employment his mentor had with NCI as well as the job description he believed was described his work with the State Department. Matthews also admits that, in his application to the FDA, he submitted videos prepared by others who worked with him at the State Department (but whose videos were created outside of work) to enhance his application. Matthews used portions of their videos like stock footage to create his own product. He sampled someone else's product without proper attribution.

At the FDA, Matthews believed he had been singled out for disparate treatment by a supervisor who he believed wanted to terminate his employment. Matthews stayed for two months following the encounter, resigned and started working at IRS. Eleven months into Matthews work at IRS, he received notice that he was being terminated. Apparently, the FDA supervisor notified his counterparts at IRS that he had falsified documents, resulting in the IRS investigation.

It was at that point that Matthews accelerated his concealment in order to maintain employment by submitted false affidavits and false emails.

## II. Legal Standard

Determining the sentence in a federal criminal case is within the discretion of the district court. The Court's discretion is to be exercised upon consideration of the

4

purposes of sentencing in light of the particular case and defendant before it. The sentencing guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors set forth in 18 U.S.C. §3553(a). *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009). The Court's decisions in *Nelson* and *Spears* built upon its earlier decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), establishing the sentencing guidelines are simply an advisory tool to be considered alongside other § 3553(a) statutory factors.

The factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the kinds of sentences available, (3) the guidelines range, (4) the need to avoid unwarranted sentencing disparities, (5) the need for restitution, and (6) the need for the sentence to reflect: the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to the defendant and others, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. §3553(a). The Court must weigh each of these factors when determining the appropriate sentence with the least amount of imprisonment necessary pursuant to §3553(a). *Id.*

"[T]he sentencing of defendants in federal court is such a common occurrence that it is important to occasionally pause and remember what is at stake. A human life … is taken away from family and familiar surroundings to serve days, months, years,

or a lifetime in a prison cell." *United States v. Faison*, No. GJH-19-27, 2020 WL 815699, at *1 (D. Md. Feb. 18, 2020). And, "[f]or him, every day, month and year that was added to the ultimate sentence will matter. The difference . . . between ten and fifteen months may determine … whether a son sees his sick parent before that parent passes away; the difference between probation and fifteen days may determine whether the defendant is able to maintain his employment and support his family." *Id*.

This concern exists "whether it is the newly incarcerated individual's first experience with incarceration or just the most recent," because regardless, "he must quickly adapt to the stunning loss of freedom and privacy while struggling to maintain any sense of his personal dignity." *Id*. Thus, the court continued, "it is crucial that judges give careful consideration to every minute that is added to a defendant's sentence." *Id*.

### III.   Sentencing Recommendation

A sentence of probation is sufficient but not greater than necessary to achieve the goals of sentencing. According to the Judiciary Sentencing Information (JSIN), between the five fiscal years 2019 through 2023, there were 961 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 8 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For all 961 defendants in the cell, the average sentence imposed was 1 month(s) and the median sentence imposed was 0 month(s). PSR, ¶99.

#### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense are straightforward. Mr. Matthews lied on multiple occasions in order to maintain his employment. After his employment

6

at FDA, he fabricated documents to support his efforts to keep his job. Although it does not matter for purposes of the offense conduct, he was clearly qualified for the employment he obtained. See Exhibit A.

### B. Personal Characteristics of Defendant

Matthews was born in Michigan. He remains heavily involved with his church and has been mentored by clergy members. He volunteers on the sound and production team and mentors less experienced technicians on best A/V practices.

He reported that growing up he didn't have many resources, and there was often financial strain. Matthews was married to his first wife for five years and there are two daughters from that union, ages 9 and 7.

Although his daughters currently live in Seattle, he supports them financially, talks to them daily, and sees them on holidays and during the summer. He frequently communicates with his daughters via Facetime. Over the last two years, he has traveled to Seattle to see his daughters they have traveled to stay with him on at least two occasions.

His current wife describes Matthews as low-key, positive, and friendly. She also stated that she believed he committed the instant offenses because he was recently divorced with two small children to support. According to her, his motivation was to maintain employment to provide for his family and "wasn't trying to get one over on the government." She indicated they have discussed his conduct and how it will potentially impact their relationship, and he regrets his involvement and knows it was not the correct course of action. PSR, ¶60.

Mr. Matthews is currently employed as a Senior Collaboration Technology

7

Specialist, and is striving toward a leadership position within his organization. He believes his work is a foundation for a stable and successful future. In addition to his career goals, he wants to enroll in a Master's program focused on Cybersecurity and Artificial Intelligence, areas where he hopes to make a meaningful contribution.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Protect the Public From Further Crimes of the Defendant

While the offenses are in this case are undoubtedly serious, and Mr. Matthews acknowledges such, he requests the Court observe that this federal felony conviction, and the subsequent supervised release will assist Mr. Matthews in his staying on the straight and narrow path. Mr. Matthews is employed and is only interested in doing all he can to support his family lawfully and appropriately. See also, *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (affirming a downward variance from 120 months in prison to 66 months with 10 years' supervised release, and observing that the sentencing court "accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct," but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release". *Primer, Departure and Variance*, [1]U.S. Sentencing Commission, (June 2013) at p. 42.

### D. The Sentence Range Established For the Applicable Category of Offense As Set Forth In the Guidelines

Mr. Matthews concurs with the United States Probation Office that the appropriate advisory sentencing guidelines range is 0 months to 6 months, and also

---

[1] https://www.ussc.gov/sites/default/files/pdf/training/primers/Primer_Departure_and_Variance.pdf

concurs with the recommendation that the Court impose a term of probation.

### E. Conclusion

For the foregoing reasons and such other reasons as may be presented at the sentencing hearing, Mr. Matthews requests the Court impose a term of probation.

Respectfully submitted,

TREMAYNE MATTHEWS
By Counsel


/s/ Pleasant Brodnax
Pleasant S. Brodnax, III
DC Bar 416694
1701 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
(202) 462-1100
pleasant.brodnax@gmail.com


CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed by CM/ECF on the 2nd day of May 2025, which will send a notification of filing (NEF) to all counsel of record.

/s/ Pleasant S. Brodnax, III
Pleasant S. Brodnax, III